1  Joshua D. Morse (SBN 211050)
   Lee Brand (SBN 287110)
2  Khyrstyn (Nan) McGarry (SBN 318677)
   PILLSBURY WINTHROP SHAW PITTMAN LLP
3  Four Embarcadero Center, 22nd Floor
   San Francisco, CA  94111
4  Telephone: (415) 983-1000
   Facsimile: (415) 983-1200
5  Email: joshua.morse@pillsburylaw.com
          lee.brand@pillsburylaw.com
6          nan.mcgarry@pillsburylaw.com
7  *Attorneys for Petitioning Creditors*

8
                    **UNITED STATES BANKRUPTCY COURT**
9
                    **NORTHERN DISTRICT OF CALIFORNIA**
10
                       **SAN FRANCISCO DIVISION**
11

12 In re:                            | Case No. 20-30450 (HLB)
13 LIFTOPIA, INC.,                   | Chapter 11
14              Debtor.              | **PETITIONING CREDITORS'**
                                     | **OPPOSITION TO DEBTOR'S**
15                                   | **MOTION TO DISMISS**
16                                   | Date: August 6, 2020
                                     | Time: 2:00 p.m.
17                                   | Place: 450 Golden Gate Avenue
                                     | 16th Floor, Courtroom 19
18                                   | San Francisco, CA
19                                   | Judge: Hon. Hannah L. Blumenstiel
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ................................................................................................ 1

II.  RELEVANT BACKGROUND ............................................................................ 2

   A. The Parties' Business Relationship ................................................................ 2

   B. The Debtor's Cessation of Payments to the Petitioning Creditors ................ 4

   C. The Involuntary Petition and the Motion to Dismiss .................................... 5

   D. The Debtor's Subsequent Revision of Claim Calculations ........................... 6

III. OPPOSITION ...................................................................................................... 7

   A. The Court Should Deny The Motion Rather Than Treat It As A Motion For Summary
      Judgment Because Such Conversion Is Disfavored On A Thin Pre-Discovery Record ......... 7

      1. The Motion Fails Under Civil Rule 12(b)(6) ................................................ 7

      2. The Court Should Not Consider the Motion Under Civil Rule 56 ................... 9

   B. Even If The Court Treats The Motion As One For Summary Judgment, The Court
      Should Still Deny The Motion Because The Debtor Has Manufactured The Purported
      Dispute ........................................................................................................... 10

   C. Even If The Court Grants The Motion, Justice Requires Allowing The Petitioning
      Creditors To Amend The Involuntary Petition ................................................ 14

   D. Even If The Court Grants The Motion, Controlling Law Requires Providing All
      Creditors With An Opportunity To Join The Involuntary Petition ................... 15

IV. CONCLUSION .................................................................................................. 17

# **TABLE OF AUTHORITIES**

**Page(s)**

Cases

*Century Sur. Co. v. Master Design Drywall, Inc.*,
No. 09CV0280-LAB (AJB), 2009 WL 3425326 (S.D. Cal. Oct. 21, 2009) ............................ 9, 10

*Dep't of Revenue v. Blixseth*,
942 F.3d 1179 (9th Cir. 2019) ........................................................................................... 12, 13

*Fustolo v. 50 Thomas Patton Drive, LLC*,
816 F.3d 1 (1st Cir. 2016) .................................................................................................... 14

*In re C&C Jewelry Mfg., Inc.*,
No. BAP CC-08-1190-HMOMK, 2001 WL 36340326 (B.A.P. 9th Cir. Apr. 14,
2009) .................................................................................................................................... 11

*In re CLE Corp.*,
59 B.R. 579 (Bankr. N.D. Ga. 1986) .............................................................................. 12, 14

*In re Focus Media, Inc.*,
378 F.3d 916 (9th Cir. 2004) ............................................................................................... 12

*In re Green Hills Dev. Co., L.L.C.*,
741 F.3d 651 (5th Cir. 2014) ............................................................................................... 13

*In re Honolulu Affordable Hous. Partners, LLC*,
No. 15-00146, 2015 WL 2203473 (Bankr. D. Haw. May 7, 2015) ............................. 13

*In re Hujazi*,
No. BAP NC-16-1018-FBJU, 2017 WL 3007084 (B.A.P. 9th Cir. July 14, 2017) ................... 15

*In re Kemmer*,
265 B.R. 224 (Bankr. E.D. Cal. 2001) ................................................................................. 15

*In re KP3 Endeavors, Inc.*,
No. BR 18-00007-MM7, 2018 WL 2117242 (Bankr. S.D. Cal. Apr. 30, 2018) ........................ 12

*In re Leong P'ship*,
No. 4:16-BK-42363, 2018 WL 1463852 (B.A.P. 9th Cir. Mar. 23, 2018), *aff'd*,
788 F. App'x 539 (9th Cir. 2019) ................................................................................... 10, 14

*In re QDOS, Inc.*,
607 B.R. 338 (B.A.P. 9th Cir. 2019) .............................................................................. passim

*In re Rothery*,
143 F.3d 546 (9th Cir. 1998) ............................................................................................ 8, 9

*In re Rubin*,
    769 F.2d 611 (9th Cir. 1985) ...................................................................................... 8

*In re Vortex Fishing Sys., Inc.*,
    277 F.3d 1057 (9th Cir. 2002) ............................................................................. 11, 16

*In re Zupancic*,
    38 B.R. 754 (9th Cir. BAP 1984) ............................................................................. 14

*Lopez v. Smith*,
    203 F.3d 1122 (9th Cir. 2000) ................................................................................. 14

*Sundby v. Marquee Funding Grp., Inc.*,
    No. 3:19-CV-0390-GPC-AHG, 2020 WL 434487 (S.D. Cal. Jan. 28, 2020) ............... 9

*Swedberg v. Marotzke*,
    339 F.3d 1139 (9th Cir. 2003) ................................................................................... 9

*United States v. Pend Oreille Public Utility Dist. No. 1*,
    28 F.3d 1544 (9th Cir. 1994) ................................................................................... 15

*United States v. Ritchie*,
    342 F.3d 903 (9th Cir. 2003) ..................................................................................... 9

*Williams v. Cty. of Alameda*,
    26 F. Supp. 3d 925 (N.D. Cal. 2014) ......................................................................... 9

*Zoslaw v. MCA Distrib. Corp.*,
    693 F.2d 870 (9th Cir. 1982) ................................................................................... 10

Statutes and Codes

Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA)
    United States Code Title 11 ...................................................................................... 11

United States Code
    Title 11 Section 303 ............................................................................................. 9, 14
    Title 11 Section 303(b) ................................................................................... 7, 15, 16
    Title 11 Section 303(b)(1) ............................................................................ 8, 12, 13
    Title 11 Section 303(b)(2) ......................................................................................... 8

Rules and Regulations

Federal Rules of Bankruptcy Procedure
    Rule 1003(b) ................................................................................................. 15, 16, 17
    Rule 1011 ....................................................................................................... 1, 8, 16
    Rule 1018 ..................................................................................................... 9, 14, 16
    Rule 7015 ................................................................................................................ 14
    Rule 7026 ................................................................................................................ 10
    Rule 7028-7037 ...................................................................................................... 10
    Rule 7056 .................................................................................................................. 2

Federal Rules of Civil Procedure

  Rule 8.................................................................................................... 16
  Rule 12.................................................................................................. 16
  Rule 12(b).............................................................................................. 8
  Rule 12(b)(6)................................................................................ 7, 8, 9, 16
  Rule 12(d).............................................................................................. 9
  Rule 15.................................................................................................. 14
  Rule 15(a)(2)........................................................................................ 14
  Rule 56.............................................................................................. 9, 10

Aspen Skiing Company, L.L.C., as Managing Member of the Mountain Collective ("TMC"), Alterra Mountain Company ("Alterra"), Cypress Bowl Recreations LP ("Cypress"), and Dundee Resort Development LLC d/b/a Arapahoe Basin Ski Area ("A-Basin," and together with TMC, Alterra and Cypress, the "Petitioning Creditors" and each a "Petitioning Creditor"), hereby oppose Liftopia, Inc.'s ("Liftopia" or the "Debtor") *Motion to Dismiss the Involuntary Petition* [DN 8] (the "Motion") pursuant to Rule 1011 of the Federal Rules of Bankruptcy Procedure as follows:

## I.     INTRODUCTION

The sole basis for the Debtor's request to dismiss the Involuntary Petition (defined below) is a self-serving, facially erroneous, and now disavowed declaration from the Debtor's CEO asserting that the Petitioning Creditors' aggregate claims of more than $3 million are slightly overstated "by over $86,000," or approximately 2.85%.[1]  The Debtor has not validated Mr. Reece's summary calculations with supporting documentation.  Nor has the Debtor detailed any history of disagreement among the parties regarding amounts owed to the Petitioning Creditors or suggested in any way that it has deferred paying the millions of dollars of obligations owed the Petitioning Creditors because of any such dispute.  To the contrary, because the Debtor has sole control over the underlying transactional data necessary to determine the amount owing to the Petitioning Creditors, the Debtor historically has calculated and satisfied its aggregate obligations to the Petitioning Creditors, and the Petitioning Creditors have validated those calculations and payments based on the transactional data provided by the Debtor, without incident.

Now, however, rather than taking responsibility for its financial missteps when faced with the reckoning of the Involuntary Petition, the Debtor, in what can only be viewed as an attempt to buy time, has filed the spurious Motion.  Even more perplexingly, the Debtor has refused to withdraw the Motion despite the reality that (i) it no longer stands behind the calculations included in the Reece Declaration, but instead relies on "corrected amounts" provided weeks later and only after multiple written and oral requests were made by counsel to the Petitioning Creditors, and (ii) the Petitioning Creditors do not dispute that the Debtor is best situated to calculate the amounts

---

[1]     *See Declaration of Evan Reece in Support of Liftopia, Inc.'s Motion to Dismiss the Involuntary Petition* [DN 10] (the "Reece Declaration" or "Reece Decl.") ¶¶ 10-15.

1    that it owes and have requested the Debtor's consent to amend the Involuntary Petition to reflect the

2    Debtor's revised calculations. Refusing to let these inconvenient facts get in the way of a good

3    story, the Debtor insists that it has established a bona fide dispute worthy of this "Court enter[ing]

4    an order dismissing the involuntary petition and bankruptcy case with prejudice." Motion at 2.

5          Such an order is improper for at least four separate reasons. ***First***, in consideration of a

6    motion to dismiss, the Court is limited to the pleadings and cannot consider extrinsic evidence such

7    as the information detailing the alleged claim calculation "dispute" manufactured by the Reece

8    Declaration. While the Court has discretion to consider that declaration if it converts the Motion to

9    one for summary judgment under Bankruptcy Rule 7056, such conversion is plainly disfavored

10   where, as here, discovery has not commenced and the movant relies on a thin evidentiary record of

11   its own making. ***Second***, even if the Court were to consider the Reece Declaration under a

12   summary judgment standard, denial of the Motion is still appropriate as a matter of law because an

13   unsupported and self-serving declaration like the Reece Declaration does not substantiate the

14   existence of a bona fide dispute. Moreover, the Debtor cannot possibly meet its burden on summary

15   judgment to conclusively establish a bona fide dispute exists where, as here, the Petitioning

16   Creditors have asked the Debtor to consent to the amendment of the involuntary petition adopting

17   the claim amounts asserted by the Debtor. ***Third***, even if the Court were inclined to find a bona fide

18   dispute as to the claim amounts reflected in the current Involuntary Petition, it should not dismiss

19   this bankruptcy case with prejudice, but instead "freely give leave" to the Petitioning Creditors to

20   file an amended involuntary petition adopting the Debtor's updated claim amounts because "justice

21   so requires." ***Fourth***, even if the Court were inclined to dismiss this bankruptcy case entirely,

22   controlling law requires providing all creditors with an opportunity to join the Involuntary Petition

23   prior to dismissal based on an insufficient number of petitioning creditors.

## II.    RELEVANT BACKGROUND

### A.    The Parties' Business Relationship

26         The Petitioning Creditors own and operate, or represent the interest of entities that own and

27   operate, mountain resorts that sell ski passes and lift tickets through the online platform operated by

28

the Debtor. *See* Reece Decl. ¶ 6; *see also* Petitioning Creditor Decls. ¶¶ 1-2.[2] The Debtor sells passes and tickets for the Petitioning Creditors through both the Liftopia.com website and through Petitioning Creditors' own websites, which leverage the Debtor's white label e-commerce service known as the "Cloud Store." Reece Decl. ¶¶ 2-3; Petitioning Creditor Decls. ¶ 2. In both cases, the Debtor collects the full retail price paid by the customer and retains an agreed upon commission. Petitioning Creditor Decls. ¶ 2. The Debtor must then remit the remaining funds collected on behalf of each Petitioning Creditor to that Petitioning Creditor. *Id.* Funds collected by the Debtor during a given calendar month must be paid to the appropriate Petitioning Creditor by a date certain that is no later than the end of the following calendar month. *Id.* Similarly, customer refunds processed by the Debtor during a given calendar month and other adjustments in Liftopia's favor are generally credited against the next payment due from Liftopia to the relevant Petitioning Creditor. *Id.*[3]

Regardless of whether a sale is made on Liftopia.com or through the Cloud Store embedded on a Petitioning Creditor's website, the Debtor has sole control of the transactional data related to that sale. *Id.* ¶ 3. Unsurprisingly, the Petitioning Creditors do not issue invoices to the Debtor based on the Debtor's own data, which cumulatively reflects thousands of individual sales facilitated by the Debtor on behalf of each Petitioning Creditor. *Id.*; Reece Decl. ¶ 14. Rather, the Petitioning Creditors rely on the Debtor to calculate and make accurate monthly payments and validate those calculations based only on the transactional data provided by the Debtor. Petitioning Creditor Decls. ¶ 3. The Petitioning Creditors have cumulatively worked with the Debtor for decades and, prior to commencing this case, none of the Petitioning Creditors has *ever* had a meaningful dispute with the Debtor regarding the amount the Debtor owed to any one of them. *Id.*

---

[2] In support of this Opposition, the Petitioning Creditors file concurrently herewith the Declarations of Matt Jones ("Jones Decl."), Karen Hamilton-Smith ("Hamilton-Smith Decl."), Roland Andreasson ("Andreasson Decl."), and Dave Reynolds ("Reynolds Decl.," and together with the Jones Decl., the Hamilton-Smith Decl. and the Andreasson Decl., the "Petitioning Creditor Decls.").

[3] For example, if the Debtor collects $100 in May for A-Basin sales and earns a 10% commission, the Debtor must pay $90 to A-Basin in June. If the Debtor also refunds $10 to an A-Basin customer in May, it receives a $9 refund from A-Basin (the 90% that went to A-Basin after the Debtor's commission) and will only pay A-Basin $81 in June.

## B. The Debtor's Cessation of Payments to the Petitioning Creditors

The Debtor made payment to each of the Petitioning Creditors in March 2020 reflecting transactions on behalf of each Petitioning Creditor during February 2020. Petitioning Creditor Decls. ¶ 4. Despite collecting millions of dollars on behalf of the Petitioning Creditors since February 2020, the Debtor has not made any further payment to three of the Petitioning Creditors, and only limited further payment to Alterra, since then. *Id.* Instead, the Debtor has repeatedly admitted to its creditors that it is in dire financial straits and is unable to pay the amounts that it owes them. *See* Jones Decl. Ex 1.

Specifically, in a broadly distributed email to its "Partners" dated April 17, 2020, the Debtor's CEO Evan Reece expressed the Debtor's "need to delay some payments to you as we secure a capital position." Jones Decl. Ex. 1 at 5; *see also id.* at 6 ("We are currently working on debt and/or equity that will allow us to pay all of our partners in full, though we will be late."). While Mr. Reece's email referenced "the negative impact COVID-19 is having on Liftopia," it also acknowledged the Debtor's poor management of its finances ***prior to*** the pandemic: "I am also very sorry for not having been in a better capital position to handle this type of crisis with less challenge for you." *Id.* at 5, 7. Subsequent correspondence between Mr. Reece and Matt Jones, the CFO of TMC's Managing Member, clarified that the Debtor's ability to make even a late payment was wholly predicated on its ability to raise additional capital. *See id.* at 1 (M. Jones: "Are you saying that (to the best of your knowledge) our funds won't be released until some partner (equity or debt) gives you fresh cash?"; E. Reece: "That's my conservative assumption at this point.").

Given the Debtor's inability to provide anything other than speculative answers as to how or when it would make further payments to creditors generally, the Petitioning Creditors and/or their affiliates sent demand letters to the Debtor in April and May of 2020 formally requesting payment of the funds they were owed or, in the case of Alterra, made verbal demand for such payment. Petitioning Creditor Decls. ¶ 5. In each case, the claim amount set forth in the demand letter was calculated based on the only information available to the Petitioning Creditors—transactional data provided by the Debtor as of that time. *Id.* In connection with receipt of such demand letters and in subsequent communications prior to the filing of the Motion, the Debtor never disputed or otherwise

1  took issue with the methodology used in any of these letters to calculate the amount owed to the

2  Petitioning Creditors.  *Id.*

3          **C.      The Involuntary Petition and the Motion to Dismiss**

4          On June 2, 2020, the Petitioning Creditors filed the *Involuntary Petition Against a Non-*

5  *Individual* [DN 1] (the "<u>Involuntary Petition</u>") commencing this case.  The claims asserted by the

6  Petitioning Creditors in the Involuntary Petition reflect the same calculation methodology employed

7  to calculate the claims asserted in the demand letters delivered to the Debtor.  Petitioning Creditor

8  Decls. ¶ 6.[4]  Each of those claims necessarily only reflected the reconciled financial information

9  made available to the Petitioning Creditors by the Debtor as of June 2, 2020.  *Id.*

10          Following the filing, the Debtor made no effort to clarify or reconcile the claim amounts

11  reflected in the Involuntary Petition.  *Id.*  Instead, on June 24, 2020, after remaining silent for three

12  weeks, the Debtor filed the Motion.  In its moving papers, the Debtor does not contest that it is

13  generally not paying its debts as they become due and concedes that it owes the Petitioning

14  Creditors millions of dollars, but alleges that the amount owed is approximately $86,000—

15  or 2.85%—less than the aggregate claim of $3,016,466.89 reflected in the Involuntary Petition.

16  *Memorandum of Points and Authorities in Support of Motion to Dismiss Involuntary Petition* [DN

17  9] (the "<u>MPA</u>") at 3 ¶¶ 5-6.  Due to multiple mathematical errors in the Reece Declaration, it is not

18  entirely clear from the Debtor's filings how much it claims to owe the Petitioning Creditors.  *See*

19  Reece Decl. ¶¶ 10, 13.[5]  Further, the Debtor's moving papers provide no supporting documentation

20  or other underlying information whatsoever regarding how it calculated the amount owed to each

21

22  _____

   [4]  A-Basin's claim amount in the Involuntary Petition is identical to its claim amount in its demand
23       letter.  Reynolds Decl. ¶ 6.  TMC's claim amount is higher in the Involuntary Petition because it
        reflects additional transactions processed by the Debtor after the demand letter was sent.  Jones
24      Decl. ¶ 6.  Cypress's claim amount in the Involuntary Petition is lower than the claim amount sent
        on its behalf by its parent company because the demand letter was sent on behalf of multiple
25      subsidiaries.  Andreasson Decl. ¶ 6.

26  [5]  Mr. Reece represents that the Debtor owes TMC $2,344,052.48 rather than $2,381,613.46, a
        supposed overstatement of $37,561.18.  *Id.* ¶ 10.  Similarly, he represents that it owes A-Basin
27      $172,119.93 rather than $175,704.83, a supposed overstatement of $2,584.90.  *Id.* ¶ 13.  As the
        respective differences between these figures are $37,56**0.98** and $**3**,584.90, it is unclear if Mr.
28      Reece has misstated the claim or the difference.

Petitioning Creditor. Instead, the Debtor summarily asserts that the Petitioning Creditors "failed (a) to calculate their share of actual pass and ticket revenue accurately, (b) to account for cancellations, chargebacks, advance purchase, no-show and loyalty program participation policies, and partial and full credits, and/or (c) to incorporate other adjustment to their share of revenue properly." *Id*. ¶ 15.

### D. The Debtor's Subsequent Revision of Claim Calculations

On June 25, 2020, the day after the Motion was filed, counsel for the Petitioning Creditors contacted counsel for the Debtor to request the supporting calculations behind the alleged overstatements identified in Paragraphs 10-13 of the Reece Declaration. Morse Decl. Ex. A at 4-5. After failing to provide any substantive response for nearly two weeks, the Debtor's counsel emailed on July 7, 2020, declining to provide the calculations supporting the Debtor's Motion and instead requesting that the Petitioning Creditors first provide the calculations underlying the claims in the Involuntary Petition because that "would be most efficient." *Id*. at 2.

Petitioning Creditors' counsel responded that same day to reiterate, as previously explained on a June 30, 2020 phone call between the parties' counsel, that "the Petitioning Creditors' claims were calculated utilizing the financial reporting provided by Liftopia," and that "[b]ased on Mr. Reece's Declaration, it appears that, as of June 2, 2020, the information made available to the Petitioning Creditors by Liftopia failed to include certain 'adjustments' leading to alleged overstatements." *Id*. at 1-2. Petitioning Creditors' counsel also renewed its June 30 request "that Liftopia consent to the amendment of the Involuntary Petition to match the claim calculations included in the Reece Declaration and withdraw the pending motion to dismiss." *Id*. at 2; *see also* Morse Decl. ¶ 3.

On July 8, 2020, the Debtor's counsel finally supplied spreadsheets "directed to each of the Petitioning Creditors, providing the information supporting Liftopia's calculations." Morse Decl. Ex. A at 1. Remarkably, the Debtor's counsel further explained that the Debtor no longer stood behind the calculations in the Reece Declaration, and that "these reports reflect the corrected amounts." *Id*. Nevertheless, the Debtor's counsel again ignored the request to consent to amendment of the Involuntary Petition based on the Petitioning Creditor's receipt of updated

6

transactional data from the Debtor, instead opaquely concluding that "we have very different views on the issues in this case" and "[w]e do not intend to withdraw the motion." *Id*.

## III. OPPOSITION

The Debtor's argument boils down to an allegation that the Petitioning Creditors failed to account for adjustments that the Debtor had exclusive knowledge of and did not provide to the Petitioning Creditors until five weeks after they had filed the Involuntary Petition and two weeks after the Motion was filed. Because the Petitioning Creditors allegedly failed to account for these undisclosed adjustments, the Debtor claims that there is a bona fide dispute with the Petitioning Creditors that warrants "an order dismissing the involuntary petition and bankruptcy case with prejudice." Motion at 2. This Court should reject the Debtor's Motion outright because it (1) relies on extrinsic evidence that the Court should exclude at the pleading stage, and (2) relies on weak and self-serving evidence and ignores strong and contradictory evidence that the Court should consider on summary judgment.

Alternatively, if the Court credits the Debtor's claim that—although it was never even hinted at prior to the Motion—a bona fide dispute does exist between the Debtor and two or more Petitioning Creditors,[6] the Court should not grant the Debtor's baseless request for dismissal with prejudice. Instead, the Court should (3) allow the Petitioning Creditors to amend the Involuntary Petition in the interest of justice to conform the claim amounts to those alleged by the Debtor, and/or (4) provide all creditors with an opportunity to join the Involuntary Petition.

### A. The Court Should Deny The Motion Rather Than Treat It As A Motion For Summary Judgment Because Such Conversion Is Disfavored On A Thin Pre-Discovery Record

#### 1. The Motion Fails Under Civil Rule 12(b)(6)

Notwithstanding the Motion's failure to articulate the standard under which it should be considered, "Civil Rule 12(b)(6) applies in a contested involuntary situation just as it does

---

[6] The Petitioning Creditors do not dispute that the Debtor has "twelve or more entities or individuals holding claims that are not contingent as to liability or subject to a bona fide dispute as to liability or amount," Reece Decl. ¶ 7; and thus that three or more of such claim holders must be among the petitioners to sustain an involuntary bankruptcy case, *see* MPA ¶ 7; 11 U.S.C. § 303(b). As there are currently four (4) Petitioning Creditors, a bona fide dispute with just one (1) Petitioning Creditor would not provide sufficient basis for dismissal.

generally; the motion challenges the sufficiency of the allegations in the involuntary petition" and the court determines if the "factual allegations, construed in the light most favorable to the non-moving party's favor, state a facially plausible claim for relief." *In re QDOS, Inc.*, 607 B.R. 338, 345 (B.A.P. 9th Cir. 2019); *see also In re Rothery*, 143 F.3d 546, 548 (9th Cir. 1998) ("[T]he strictures of Bankruptcy Rule 1011 and Rule 12(b)(6) of the Federal Rules of Civil Procedure . . . require[] the court to consider in a motion for dismissal only the matters in the pleadings.").[7] Here, the factual allegations in the Involuntary Petition, construed in the light most favorable to Petitioning Creditors, unquestionably state a claim for relief in the context of a contested involuntary petition—*i.e.*, that the Debtor "is in actual financial distress" and that "there is sufficient desire for an involuntary bankruptcy." *QDOS*, 607 B.R. at 343 (citing 11 U.S.C. § 303(b)(1)-(2)); Involuntary Petition at 2, 7 (alleging the Debtor is not paying its undisputed debts as they come due and identifying number of Petitioning Creditors and amount of undisputed aggregate claims in excess of the statutory thresholds). Moreover, the Debtor's Motion does not even purport to challenge the sufficiency of the allegations in the Involuntary Petition. Instead, it rests entirely on extrinsic evidence, contending that the "Reece Declaration demonstrates that the asserted claim of each Petitioning Creditor is the subject of a bona fide dispute as to amount." MPA at 1. Because the Court cannot consider the Reece Declaration on a motion to dismiss, and the Motion offers no other basis for dismissal, the Motion plainly fails. *See QDOS*, 607 B.R. at 345 ("In many cases, a bankruptcy court will not be able to dismiss an involuntary case solely on a motion to dismiss. If the petitioning creditors plausibly allege that they have met the standards, the motion must fail, and the involuntary debtor must answer.").

---

[7] The Debtor purportedly "brings its motion to dismiss the involuntary petition under FRCP Rule 12(b) because Petitioning Creditors are ineligible and lack standing to commence this involuntary case." Motion at 2. Under longstanding Ninth Circuit law, "the undisputed claims requirement" of 11 U.S.C. § 303(b)(1)—the only basis on which the Debtor contests the Petitioning Creditors' standing and eligibility — "is not jurisdictional." *In re Rubin*, 769 F.2d 611, 615 (9th Cir. 1985). Thus, the Motion plainly falls within the 12(b)(6) defense of "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

## 2. The Court Should Not Consider the Motion Under Civil Rule 56

To the extent the Court is inclined to "consider[] evidence outside the pleadings, it must normally convert the 12(b)(6) motion into a Rule 56 motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003) (listing exceptions plainly inapplicable to the Reece Declaration—*i.e.*, attachments to the pleadings, incorporation by reference, and judicial notice); *see also* Fed. R. Civ. P. 12(d) (where "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56").

Conversion, however, is not mandatory. Rather, "the Court has discretion either to consider or reject such evidence" that would require converting the Debtor's Motion into a Rule 56 motion. *Williams v. Cty. of Alameda*, 26 F. Supp. 3d 925, 935 (N.D. Cal. 2014) (citing *Swedberg v. Marotzke*, 339 F.3d 1139, 1143-1146 (9th Cir. 2003)). In exercising such discretion, courts are guided by the fact that "Rule 12(d) requires that '[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion,'" and thus, "if a claim or defense would benefit from additional discovery, a court is likely to not consider the documents and forgo converting the motion into one for summary judgment." *Sundby v. Marquee Funding Grp., Inc.*, No. 3:19-CV-0390-GPC-AHG, 2020 WL 434487, at *2 (S.D. Cal. Jan. 28, 2020) (alterations in original); *see also QDOS*, 607 B.R. at 345 n.7 ("Rule 1018 also allows for summary judgment. But just as in ordinary civil litigation, the court may not grant summary judgment if genuine disputes of material fact exist or further discovery is warranted."); *Williams*, 26 F. Supp. 3d at 936 (declining to convert "[g]iven the relatively early stage of this litigation" and the need for "an adequate opportunity to fully develop the factual record"); *Century Sur. Co. v. Master Design Drywall, Inc.*, No. 09CV0280-LAB (AJB), 2009 WL 3425326, at *2 (S.D. Cal. Oct. 21, 2009) ("there must be a meaningful opportunity for discovery before the Court will convert a motion to dismiss into a motion for summary judgment").

Here, the Petitioning Creditors have had no opportunity for discovery whatsoever, despite the fact that the "filing of an involuntary case requires the petitioning creditor to meet the burden of proof on the main elements of § 303," and the corresponding expectation that "[p]rehearing discovery is available to the creditors." *Rothery*, 143 F.3d at 548 (citing Fed. R. Bankr. P. 1018,

1    7026, 7028-7037).  Moreover, the issue raised by the Motion relates to information that is in the

2    exclusive control of the Debtor.  *See* Reece Decl. ¶¶ 9-13 (repeatedly asserting "a bona fide dispute

3    as to amount" based on what "Liftopia's books and records demonstrate"); *see also* Petitioning

4    Creditor Decls. ¶ 3.  Nevertheless, "just one month after this case was filed," the Debtor "would

5    have the Court, on the basis of a declaration submitted by its owner . . . , grant summary judgment

6    in its favor."  *Century*, 2009 WL 3425326, at *2.  "Conversion is not favored under these

7    circumstances," both because it "would be premature" before "discovery has taken place" and

8    because the Court should "not make a summary judgment ruling on the thin evidentiary record

9    before it."  *Id.*

10        In sum, the Court should exercise its discretion to exclude the Reece Declaration, deny the

11   Motion on that basis, and order the Debtor to answer the Involuntary Petition so that discovery may

12   proceed.[8]

13        **B.     Even If The Court Treats The Motion As One For Summary Judgment, The
                   Court Should Still Deny The Motion Because The Debtor Has Manufactured
14                 The Purported Dispute**

15        Under Rule 56, the moving party bears the burden of showing that there are no genuine

16   issues of material fact and that it is entitled to judgment as a matter of law.  *Zoslaw v. MCA Distrib.*

17   *Corp.*, 693 F.2d 870, 883 (9th Cir. 1982).  Accordingly, the Debtor's Motion may be granted only if

18   the Debtor can show that it is undisputed that Petitioning Creditors' claims are subject to a bona fide

19   dispute as to amount.  *See In re Leong P'ship*, No. 4:16-BK-42363, 2018 WL 1463852, at *7 & n.13

20   (B.A.P. 9th Cir. Mar. 23, 2018) (acknowledging that "the standard for summary judgment is

21   somewhat confusing" in the context of the bona fide dispute requirement, but that a moving debtor

22   must "establish that there was no genuine dispute that [petitioning creditors'] claims were

23   disputed"), *aff'd*, 788 F.App'x 539 (9th Cir. 2019).  This is a significant burden that the Debtor

24   cannot meet for two distinct reasons.

25        ***First***, as discussed in more detail in Part III.C, *infra*, the calculation of the amounts owed are

26   based in full upon information previously provided by the Debtor to the Petitioning Creditors and

27

28   [8]    The Court should similarly exclude the extrinsic evidence submitted by Petitioning Creditors
            herewith if it does not convert the Motion to one for summary judgment.

the Petitioning Creditors have offered to amend the Involuntary Petition to adopt the revised claim amounts asserted by the Debtor as reflecting more up to date and complete calculations. *See* Morse Decl. Ex. A at 2; Petitioning Creditor Decls. ¶ 7. Thus, there is simply ***no dispute*** as to amount, much less an undisputed bona fide dispute. This alone should end the Court's inquiry and indeed should have led the Debtor to consent to the requested amendment and withdraw the Motion.

***Second***, the Debtor conflates the alleged existence of ***any*** dispute—even a post-petition dispute manufactured by the Debtor's obfuscation of updated information for the sole purpose of creating a dispute—with a ***bona fide*** dispute. This is not the law. As reflected in the precedent cited by the Debtor itself: "[F]or a bona fide dispute to exist, the alleged debtor must do more than just disagree with the amount of the claim. Rather, the court must determine there is 'an objective basis for either a factual or legal dispute as to the validity of the debt.'" *In re C&C Jewelry Mfg., Inc.*, No. BAP CC-08-1190-HMOMK, 2001 WL 36340326, at *7 (B.A.P. 9th Cir. Apr. 14, 2009) (quoting *In re Vortex Fishing Sys., Inc.*, 277 F.3d 1057, 1064 (9th Cir. 2002)); *see also id.* ("Under BAPCPA, it may be more accurate to articulate the standard as determining whether there is an 'objective basis for either a factual or legal dispute as [to] the amount or the liability of the petitioning creditors' claims.'" (alteration in original)).[9]

Here, the Debtor has failed to substantiate a bona fide dispute because the ***only thing*** that it has done is "disagree with the amount of the claim" by using updated figures hidden from the Petitioning Creditors as of the filing of the Involuntary Petition. Specifically, the Motion relies exclusively on a self-serving and conclusory declaration that asserts that each Petitioning Creditor's claim is overstated, but offers no calculations, records, or other "objective basis" whatsoever in support of this assertion. *See* Reece Decl. ¶¶ 9-15. Moreover, the Debtor has now disavowed the calculations in its own declaration and instead apparently bases the Motion on "corrected amounts" provided by counsel and unaccompanied by any sworn declaration or other verification from the

---

[9] Far from relying on a debtor's mere declaratory say-so, *C&C* found a bona fide dispute as to both liability and amount based on "more than 1800 pages of record and evidence submitted by the parties demonstrat[ing] there are numerous accounting disputes." *Id.* Further, because the entire claim amounts were disputed, the court explained that "whether or not BAPCPA changes the Ninth Circuit rule is ultimately not determinative." *Id.*

Debtor.  Morse Decl. Ex. A at 1.  This "evidence" may show the Debtor's attempt to manufacture a post-petition dispute as to amount to continue avoiding its financial reality, but it is plainly insufficient to show the existence of a bona fide dispute under Section 303(b)(1).  *See, e.g.*, *In re KP3 Endeavors, Inc.*, No. BR 18-00007-MM7, 2018 WL 2117242, at *7 (Bankr. S.D. Cal. Apr. 30, 2018) (finding no bona fide dispute where, *inter alia*, debtor "simply manufactured [ ] 'disputes' . . . to defeat the Involuntary Petition" and specifically noting that debtor's "self-serving testimony is insufficient to prove the existence of a bona fide dispute" (alteration in original));[10] *In re CLE Corp.*, 59 B.R. 579, 584-85 (Bankr. N.D. Ga. 1986) (finding no bona fide dispute where debtor raised "creative" defense solely to defeat the involuntary petition, had previously acknowledged and regularly paid its obligations to creditors, and only ceased making payments due to financial difficulties);[11] *cf. QDOS*, 607 B.R. at 347 (finding bankruptcy court erred in imposing Section 303(b)(1)'s numerosity requirement based on declaration of debtor's CEO that "baldly stated" that debtor "has twelve or more entities or individuals which would be classified as claimholders").[12]

Nor do the cases cited in the Motion suggest any different result.  The Debtor relies primarily on *Dep't of Revenue v. Blixseth*, 942 F.3d 1179 (9th Cir. 2019), for the proposition "that the existence of a ***bona fide*** dispute as to any amount is sufficient to disqualify a petitioning creditor . . . , even if the undisputed portion of the claim amount is above the statutory threshold."  MPA ¶ 10 (citing *Blixseth*, 942 F.3d at 1185-86) (emphasis added).  But because there is no dispute as to amount, let alone a bona fide one, *Blixseth* provides no basis to disqualify any of the Petitioning Creditors here.  Moreover, *Blixseth* can be readily distinguished on its facts.

---

[10]  Although *KP3* follows the now overturned rule set forth in *In re Focus Media, Inc.*, 378 F.3d 916, 926 (9th Cir. 2004), Petitioning Creditors cite it only for the limited proposition that a dispute manufactured by a debtor solely for the purpose of defeating an involuntary petition is not a "bona fide dispute" under Section 303(b)(1).

[11]  While *CLE* predates the 2005 amendments adding "or amount" to Section 303(b)(1), it specifically held that "no credible evidence of a specific dispute ***or specific amount in dispute*** was presented."  *Id*. at 584-85 (emphasis added).  Thus, like *KP3*, it stands for the proposition that a dispute created solely for the purposes of defeating an involuntary petition—whether as to liability *or* amount—does not constitute a bona fide dispute.

[12]  The Petitioning Creditors also reserve the right to lodge evidentiary objections to the Reece Declaration if the Court converts the Motion to one for summary judgment.

There, the petitioning creditor was the Montana Department of Revenue ("MDOR"), which claimed that the debtor owed over $9 million in tax labilities based on an audit that *it* had conducted. *Blixseth*, 942 F.3d at 1186-87. As soon as the debtor acknowledged $200,000 of the alleged debt, the MDOR filed an involuntary petition to leverage that $200,000 concession to collect on the entire multimillion-dollar claim. *Id.* at 1187. As the Ninth Circuit explained, the requirement of a bona fide dispute as to amount is intended to "prevent creditors from . . . bully[ing] an alleged debtor into settling a speculative or validly disputed debt," *id.* at 1183, and the MDOR had thus "engaged in the very type of conduct that § 303(b)(1)'s 'bona fide dispute' limitation seeks to prohibit." *Id.* at 1187. The *Blixseth* court rightfully rejected the government's coercive tactics, finding that "although a portion of [the petitioner's] claim was undisputed on the petition date, the vast majority of its claim remained disputed. As a result, [its] claim was the subject of a bona fide dispute as to amount." *Id.*

Here, every fact is reversed. First, the Involuntary Petition reflects claim amounts based on the transactional data provided by the Debtor, not Petitioning Creditors' independent audit. Second, prior to the filing of the Involuntary Petition, the Debtor admitted that it ceased making payments to the Petitioning Creditors because of its financial situation, not because of any "speculative or validly disputed debt." Third, far from bullying the Debtor into accepting higher claim amounts, the Petitioning Creditors have agreed to amend the Involuntary Petition to reflect the lower claim amounts that the Debtor alleges are accurate (albeit on a moving target basis). Finally, even before the Petitioning Creditors agreed to amend their claim amounts, the "vast majority" of the claims were **un**disputed. As a result, the Petitioning Creditors' claims are **not** the subject of a bona fide dispute as to amount.[13]

If the facts of *Blixseth* represent the "very type of conduct"—by **petitioning creditors**—"that § 303(b)(1)'s 'bona fide dispute' limitation seeks to prohibit," *id.* at 1187, then the instant case

---

[13] The other cases relied on by the Debtor for disqualification also represent clearly bona fide disputes. *See, e.g.*, *In re Honolulu Affordable Hous. Partners, LLC*, No. 15-00146, 2015 WL 2203473, at *5 (Bankr. D. Haw. May 7, 2015) (finding bona fide dispute where, *inter alia*, parties pre-petition correspondence expressly acknowledged dispute as to amount owed); *In re Green Hills Dev. Co., L.L.C.*, 741 F.3d 651, 659-60 (5th Cir. 2014) (finding bona fide dispute where claim was subject to unresolved, multiyear litigation in state court).

represents the very type of conduct by a ***debtor*** that Section 303 seeks to remedy. "From both the timing and the substance of Debtor's alleged disputes, it is apparent that the Debtor's disputes are not in good faith and have been raised solely for the purpose of opposing the Petition." *CLE*, 59 B.R. at 584-85. Even standing alone, the conclusory, unsupported, and now abandoned calculations in the Reece Declaration cannot possibly satisfy the Debtor's burden to establish that there is no genuine issue of material fact—*i.e.*, that it is undisputed—that a bona fide dispute exists. *See Leong*, 2018 WL 1463852 at *7 & n.13. When looked at in the additional context of the Debtor's pre-petition and post-Motion conduct, the Debtor's arguments fail even the straight-face test.

## C. Even If The Court Grants The Motion, Justice Requires Allowing The Petitioning Creditors To Amend The Involuntary Petition

In the alternative, if the Court finds that two or more of the Petitioning Creditors are disqualified due to a bona fide dispute as to the amount they are owed, which it should not, the Petitioning Creditors respectfully request that the Court grant them leave to amend the Involuntary Petition to conform to the claim amounts alleged by the Debtor. Under Rule 7015 of the Bankruptcy Rules, which adopts Rule 15 of the Federal Rules of Civil Procedure, pleading amendments are freely given unless the opposing party makes a showing of futility, undue prejudice, or bad faith or dilatory motive on the part of the moving party. *In re Zupancic*, 38 B.R. 754, 761 (9th Cir. BAP 1984); *see also* Fed. R. Civ. P. 15(a)(2); *Fustolo v. 50 Thomas Patton Drive, LLC*, 816 F.3d 1, 11 (1st Cir. 2016) ("Certainly, [petitioning creditor] Drive could have sought to formally amend the claim it asserted in its involuntary petition." (citing Fed. R. Bankr. P. 1018, 7015; Fed. R. Civ. P. 15.")).

Here, because the Petitioning Creditors have already offered to amend the Involuntary Petition to adopt the claim amounts alleged by the Debtor, *see* Morse Decl. ¶ 3 and Ex. A at 2; *see also* Petitioning Creditor Decls. ¶ 7; the Debtor cannot possibly show that amendment would be futile. *See Zupancic*, 38 B.R. at 759; *see also Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000)

1  (courts "should grant leave to amend even if no request to amend the pleading was made, unless it

2  determines that the pleading could not possibly be cured by the allegation of other facts").

3       Moreover, this case has been pending for less than two months, the Debtor has not yet filed a

4  responsive pleading, and the Petitioning Creditors have not yet sought any discovery.  In these

5  circumstances amendment "must be allowed" because the Debtor "suffers no prejudice as a result of

6  the amendment and [it] would not require the [Debtor] to undertake an entirely new course of

7  defense or conduct substantial additional discovery."  *In re Kemmer*, 265 B.R. 224, 230 (Bankr.

8  E.D. Cal. 2001) (citing *United States v. Pend Oreille Public Utility Dist. No. 1*, 28 F.3d 1544, 1552-

9  53 (9th Cir. 1994)).  To the contrary, it is the Petitioning Creditors that are suffering prejudice in

10  being forced to oppose the Debtor's frivolous Motion.[14]

11
         **D.      Even If The Court Grants The Motion, Controlling Law Requires Providing All
12                 Creditors With An Opportunity To Join The Involuntary Petition**

13       Even if the Court finds that two or more of the Petitioning Creditors are disqualified due to a

14  bona fide dispute as to the amount they are owed, and declines to grant the Petitioning Creditors

15  leave to amend the Involuntary Petition, which it should not, controlling law still requires providing

16  ***all creditors*** with an opportunity to join the Involuntary Petition prior to dismissal based on an

17  insufficient number of petitioning creditors.  *See QDOS*, 607 B.R. at 341; *see also In re Hujazi*, No.

18  BAP NC-16-1018-FBJU, 2017 WL 3007084, at *1-2 (B.A.P. 9th Cir. July 14, 2017) (discussing

19  this Court's treatment of motion to dismiss raising bona fide disputes as motion for summary

20  judgment, grant of summary judgment as to some petitioning creditors, and order that debtor file an

21  answer and, if arguing too few petitioning creditors, Rule 1003(b) list).[15]

22

23  [14]   The Petitioning Creditors reserve the right to request that this Court order reimbursement of the
24       fees and expenses incurred by the Petitioning Creditors in connection with contesting the Motion
         based on the Debtor's refusal to consent to the amendment of the Involuntary Petition and
25       withdraw the Motion.

26  [15]   *See also* Fed. R. Bankr. P. 1003(b) ("If the answer to an involuntary petition filed by fewer than
         three creditors avers the existence of 12 or more creditors, the debtor shall file with the answer a
27       list of all creditors with their addresses, a brief statement of the nature of their claims, and the
         amounts thereof.  If it appears that there are 12 or more creditors as provided in § 303(b) of the
28       Code, the court shall afford a reasonable opportunity for other creditors to join in the petition
         before a hearing is held thereon.").

Case: 20-30450    Doc# 16    Filed: 07/16/20    Entered: 07/16/20 16:46:01    Page 20 of
22

*QDOS* is instructive as it also involved an involuntary case in which the Debtor "did not dispute the petition's allegation that it was not paying its debts as they came due," but instead filed a motion to dismiss in which it "asserted that it had 12 or more claimholders, and, thus, the involuntary petition was not filed by three creditors as required by § 303(b)." *QDOS*, 607 B.R. at 341. Further, petitioning creditors there similarly "argued that the grounds for dismissal relied on disputed facts which could not be resolved on a Civil Rule 12(b)(6) motion to dismiss." *Id.* The bankruptcy court ultimately held a trial in response to the motion and dismissed, finding that the debtor had more than 12 creditors and that there were insufficient petitioning creditors. *Id.* at 341-42.

The Bankruptcy Appellate Panel took no issue with these findings, but still reversed and remanded because the bankruptcy court had erred in its pre-trial determination "that a Rule 1003(b) list was unnecessary because QDOS filed a motion instead of an answer." *Id.* at 341. Based on Bankruptcy Rules 1011 and 1018 and Civil Rules 8 and 12, the panel found that "once the bankruptcy court implicitly denied QDOS's Civil Rule 12(b)(6) motion and actually postponed decision until trial, QDOS was required to answer within 14 days and to accompany its answer with the list required by Rule 1003(b) as it asserted that it had more than 12 creditors." *Id.* at 347. Even if this Court were inclined to determine the instant Motion on summary judgment without trial, however, *QDOS* still instructs that where "courts find a 'gap' in the Rules related to Rule 1003(b)" because it "only facially applies when the defense [of a failure to comply with the three-petitioner requirement] is raised by answer, not motion," the "'sensible solution' . . . is to apply the same procedure when the defense is raised by motion." *Id.* Put another way, there is a Ninth Circuit "requirement that all claimholders receive an opportunity to consider supporting an involuntary petition when the debtor is in financial distress even if there initially are too few petitioning creditors." *Id.* at 344-45 (citing *Vortex Fishing*, 277 F.3d at 1070-72); *see also id.* at 343 (noting "the importance of the right to join given that an involuntary petition may provide significant benefit to all creditors," and further explaining that "where an entity is in true economic distress, an involuntary filing may stop the race to the state courthouse and the dismemberment of a debtor

through involuntary liens, level the playing field among unsecured creditors, and otherwise appropriately aid creditors").

So too here, the opportunity for joinder provided by a Rule 1003(b) list remains necessary even though the Debtor asserted an insufficient number of petitioning creditors by motion rather than answer. Where, as here, the Debtor does not contest that it is not paying its debts as they become due, the opportunity to join may significantly benefit all creditors and such a list is mandatory prior to dismissal of the case.

## IV.    CONCLUSION

For all the reasons set forth above, the Petitioning Creditors respectfully request that the Court deny the Debtor's Motion in all respects. To the extent that the Court does identify sufficient bona fide disputes to warrant dismissal, the Petitioning Creditors respectfully request that the Court grant leave to amend the Involuntary Petition and provide all creditors with the opportunity to join the Involuntary Petition prior to dismissal.

Dated: July 16, 2020                    **PILLSBURY WINTHROP SHAW PITTMAN** LLP


By:    */s/ Joshua D. Morse*
                                        Joshua D. Morse

                                        *Attorneys for Petitioning Creditors*